**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KATHLEEN GIROUARD** | **CIVIL ACTION** |
| **VERSUS** | **NO:  06-2122-SS** |
| **EDISON CHOUEST OFFSHORE, LLC, et al** | |

## <u>ORDER AND REASONS</u>

Before the undersigned is the motion of the defendants, Edison Chouest Offshore, LLC ("Chouest") and Galliano Marine Service, LLC ("GMS"), for summary judgment seeking dismissal of the claims of the plaintiff, Kathleen Girouard ("Girouard"), with prejudice.  For the reasons described below the motion is granted.

## <u>PROCEDURAL BACKGROUND</u>

On April 20, 2006, Girouard filed a complaint for relief under Title VII, 42 U.S.C. §2000e, and under Louisiana law.  Rec. doc. 1.  The parties consented to trial before a Magistrate Judge.  Rec. doc. 8.  The defendants filed a motion to dismiss the state law claims as prescribed, which was granted.  Rec. docs. 5 and 10.

Girouard terminated her lawyer and he was granted leave to withdraw.  Rec. docs. 14 and 16.  Since then she has appeared in proper person.  A telephone preliminary conference was held on September 28, 2006, at which time the trial was set on October 15, 2007.  Rec. doc. 17.  Girouard's deposition was set for August 2, 2007.  Rec. doc. 20.  The defendants' deadline to file

a motion for summary judgment was extended. Rec. doc. 21. On August 27, 2007, the defendants filed their motion for summary judgment. Rec. doc. 24. Girouard filed an opposition. Rec. doc. 27. The defendants filed a reply. Rec. doc. 28.

## LEGAL STANDARD

Fed. R. Civ. P. 56 provides in pertinent part that summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990). To that end, the court must "view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Wyatt v. Hunt Plywood, 297 F.3d 405, 409 (5th Cir. 2002). Where the record taken as whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Washington v. Allstate Ins. Co., 901 F.2d 1281 (5th Cir. 1990).

Furthermore, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the non-movant's case. Celotex, 106 S.Ct. at 2553; see Lujan, 110 S. Ct. at 3187. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the non-movant's response. If the movant does, however, meet this burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex, 106 S.Ct. at 2553-54. A dispute over

a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001).

This burden is not satisfied with "some metaphysical doubt as to the material facts," Matsushita, 106 S.Ct. at 1356, by "conclusory allegations," Lujan, 110 S. Ct. at 3180, by "unsubstantiated assertions," Hopper v. Frank, 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir.1994). The court resolves factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. See Lujan, 110 S. Ct. at 3188. Summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir.1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted. See Evans v. City of Bishop, 238 F.3d 586, 588-89 (5th Cir. 2000).

In Fierros v. Texas Dept. of Health, 274 F.3d 187 (5th Cir. 2001), the Fifth Circuit cautioned that summary judgment is not favored in claims of employment discrimination and that the Supreme Court in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000), emphasized the paramount role that juries play in Title VII cases, stressing that in evaluating summary judgment evidence, courts must refrain from the making of credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, which are jury functions, not those of a judge. Fierros, 274 F.2d at 190-91.

## PLAINTIFF'S CONTENTIONS

Girouard alleges that in 2003 and until her termination in January, 2004 she was employed by the defendants as a cook on the defendants' vessel, the M/V Stella Rowan. During that time the captain of the vessel was Glen Duet. She alleges that Duet made repeated sexual advances. On January 1, 2004, she alleges a sexual encounter occurred between Duet and Girouard. Thereafter, however, she alleges she refused further advances. Within a few days she was terminated for arguing and making contact with another employee on the vessel. She alleges that the real reason for her termination was her refusal to engage in further sexual activities with Duet. Rec. doc. 1.

Girouard alleges that she had disagreements with two male employees on the vessel, other than Duet. She alleges that the disagreements were the result of sexual harassment by the male employees. Girouard contents that any physical contact with these male employees was minimal and viewed by all as a joke. She complained to Captain Duet about the harassment and sought a transfer. The defendants took no action to stop the harassment. The disagreements were exaggerated to provide defendants with a pretext for terminating her. She alleges that defendants did not terminate male employees who engaged in heated arguments, threats of physical violence, and physical altercations while on defendants' vessels. Rec. doc. 1.

## DEFENDANTS' RESPONSE

The defendants contend that Girouard cannot establish a prima facie case of discrimination because: (1) there is no proof that employees outside of her class were treated more favorably than she was; (2) if she contends that the male employees with whom she argued were treated more favorably than she was, there was no discriminatory treatment; and (3) while there is evidence that

Girouard actually made physical contact with the male employees with whom she argued, there is no evidence that they made any contact with her. Assuming she can establish a prima facie case, the defendants contend there were legitimate business reasons for terminating her and urge that Girouard has no evidence to demonstrate that these reasons were false.

## UNDISPUTED FACTS

Pursuant to Local Rule 56.2, each pleading opposing summary judgment shall include "a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of this motion, unless controverted as required by these rules." Girouard did not comply with this rule. Girouard is proceeding without counsel. Although pro se plaintiffs are entitled to some leniency, "the right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)  When a party fails to comply with L.R. 56.2, the court must deem the defendants' statement of uncontested facts as true for purposes of this motion. Tomlinson v. Allstate Indemnity Company, 2007 WL 325361, *2, n. 2 (E.D. La. 2007).

The court reviewed the evidence submitted in support of defendants' statement of undisputed facts. Based on that evidence, the following are the undisputed facts.

1.  Girouard applied for work with GMS in July, 2001, and was hired by GMS effective

July 30, 2001. Exhibit 1.[1]

    2.    GMS was Girouard's employer, not Chouest. Exhibit 3 at pp. 42-43.

    3.    Girouard received a copy of GMS' Workplace Harassment and Discrimination Policy ("Discrimination Policy") and was required to sign it, thereby acknowledging that she received the policy and was aware of its terms. Exhibit 5.

    4.    When GMS revised its policy in the fall of 2001, Girouard received a copy of that policy and acknowledged that she had received the policy and was aware of its terms. Exhibit 6.

    5.    Girouard was aware of GMS's Discrimination Policy. Exhibit 3 at pp. 83-84.

    6.    Girouard's employment with GMS was "at will," meaning that she could be terminated without cause at any time. Exhibit 3 at p. 72.

    7.    In December of 2001, while working aboard the M/V Louise Provine, Girouard was disciplined by the vessel's captain after getting into an argument with him. Exhibit 7.

    8.    On January 2, 2004, Girouard was on the M/V Stella Rowan and went to Captain Duet's room at approximately 1:00 a.m., woke him up, and went into his quarters. Girouard and Captain Duet then engaged in consensual foreplay of a sexual nature but did not have intercourse. At approximately 3:00 a.m., Girouard left the room. Exhibit 8 at pp. 6-7.

    9.    There was no force exerted in the sexual encounter on January 2, 2004. Exhibit 3 at p. 184.

    10.    On January 10, 2004, Girouard was involved in a verbal altercation with another

---

[1] Exhibit references correspond to the exhibits that are attached to defendants' motion for summary judgment. Rec. doc. 24.

crewmember, Robert Alario, in the vessel's kitchen. During that altercation, Girouard put her hands around Alario's throat and said "this is why I want to kill you sometimes." Exhibit 9 at para. 4.

11.  Alario did not feel comfortable with Girouard's actions given the fact that she had recent outbursts directed toward him. Exhibit 9 at para. 4.

12.  Girouard has screamed and cursed at Alario. Exhibit 9 at para. 4.

13.  Girouard told people that Alario was Captain Duet's "bitch." Exhibit 9 at para. 4.

14.  Following the altercation with Alario, Girouard went up to the wheelhouse and Alario followed her. Exhibit 9 at para. 4.

15.  Captain Duet and Robert Grabert, who was a licensed officer and the relief captain, were in the wheelhouse. Captain Duet was steering the vessel. Exhibit 8 at para. 8.

16.  Girouard pushed Grabert who told her she better never do that again. She replied by pushing him again and saying "like this?" Exhibit 10 at para. 6 and Exhibit 13.

17.  Grabert did not view Girouard's actions as a joke. Exhibit 10 at para. 6.

18.  Under Coast Guard regulations, assaulting a licensed officer aboard a vessel is a felony. Exhibit 11 at para. 8, and Exhibit 12 at para. 9.

19.  These incidents were reported to GMS management. Raymond Gaubert, GMS operations manager, and Steve Ledet, GMS operations coordinator, conducted an investigation of the incident. Exhibit 11 at paras. 4-6, and Exhibit 12 at paras. 5-6.

20.  Witnesses were interviewed, including Girouard. During her interview, Girouard admitted that she had pushed Grabert twice, but said it was in jest. She also admitted placing her hands around Alario's neck. Exhibit 11 at para. 7, and Exhibit 12 at paras. 7-8.

21. After conducting their investigation, Ledet and Gaubert made the decision to terminate Girouard's employment effective January 21, 2004.  Exhibit 14.

22. Ledet and Gaubert made the decision to terminate Girouard based upon her inappropriate conduct, including the altercations and physical conduct with other employees, in violation of GMS's policy.  Exhibit 11 at para. 8, Exhibit 12 at para. 9, and Exhibit 14.

23. Neither Ledet nor Gaubert had any knowledge whatsoever of Girouard's prior sexual encounter with Captain Duet at the time they made the decision to terminate her employment.  Exhibit 11 at para. 9, and Exhibit 12 at para.10.

24. Captain Duet had no part in the decision to terminate Girouard.  Exhibit 8 at p. 11.

25. On or about March 5, 2004, Girouard spoke with Tracee Cloutier in the GMS personal department to complain about her termination.  She did not raise the issues of harassment, discrimination, or even her prior encounter with Captain Duet.  Exhibit 2 at para. 7.

26. GMS investigated Girouard's complaint, and Cloutier wrote her a letter addressing each of her contentions.  Exhibit A attached to Exhibit 2.

27. Seven months after making her March 2004 complaint to GMS, Girouard filed a charge of discrimination with the Equal Employment Opportunity Commission.  Exhibit 15.

28. GMS conducted its own investigation into the charge.  Exhibit 8 at para. 12, and Exhibit 18.

29. GMS interviewed another cook, Donna Cox-Lane, who stated that Captain Duet always treated her in a respectful and professional manner.  Exhibit 16.

30. Another GMS employee, Cynthia Long, was interviewed and stated that Captain Duet

never sexually harassed her and she never witnessed him harass Girouard. Long also stated that Girouard "was sort of possessive about Glenn Duet" and "would turn moody" and "hostile" toward her if she spent much time with Duet. Exhibit 17.

      31.    Duet was interviewed about the allegations contained in the EEOC charge. He acknowledged that he had engaged in one sexual encounter with Girouard, but stated it was consensual and that he had never harassed her or retaliated against her. Exhibit 2 at para. 10.

      32.    Duet was terminated for exercising inappropriate judgment because engaging in sexual conduct, even consensual sexual activity, aboard a vessel demonstrated poor judgment and was against GMS's policy. Exhibit 18.

      33.    The EEOC dismissed the charge without finding any cause or issuing any finding of evidence to support the charge. Exhibit 19.

      34.    GMS's Discrimination Policy provided that,

> All complaints regarding harassment by any supervisor, manager or fellow employee should be immediately communicated to **Dionne Chouest**, General Counsel, and if that is not possible, then to your location's Personnel Manager. Each employee has not only a right but a duty, to report that which she or he believes may constitute harassment. Moreover, GMS will not condone or authorize any kind of retaliation against any employee who has made a good faith report of conduct which he or she believes may constitute harassment in violation of this policy.

Exhibit 5 (Emphasis in original). Girouard never attempted to call Dionne Chouest in accordance with GMS's Discrimination Policy until after she was terminated by GMS. Exhibit 3 at p. 102.

## **ANALYSIS**

A.    <u>Girouard's burden of proof under Title VII</u>.

      The shifting burden of proof in Title VII cases is well settled. In an action for employment

discrimination, the burden of persuading the trier of fact that the defendant employer intentionally discriminated against the employee remains at all times with the plaintiff. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 2749 (1993). In St. Mary's Honor Center, the Court clarified the burden of proof originally established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). Under this model, Girouard must initially establish a prima facie case of discrimination. Id.

To establish a prima facie case of discrimination, Girouard must prove each of the following essential elements: (1) she is a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action because of her membership in a protected class, and (4) employees outside her class were treated more favorably than she was. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089 (1981).

Once Girouard establishes a prima facie case, the burden shifts to GMS to produce a legitimate, non-discriminatory reason for its decision. Burdine, 101 S.Ct. at 1094. GMS's burden at this initial stage is one of production only. That is, GMS need not persuade the Court that its reasons are legitimate; it need only come forward with some explanation which, if believed, would be legitimate and non-discriminatory. Bodenheimer v. PPG Industries, Inc., 5 F.3d 955, 958 (5th Cir. 1993). Once GMS meets its burden of production, Girouard must present competent summary judgment evidence that GMS's proffered reason is false and that unlawful discrimination was the true reason behind the employment action. Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993-95 (5th Cir. 1996). An employee's own subjective belief of discrimination, no matter how genuine, cannot create a genuine issue of material fact to defeat summary judgment. Nichols v. Loral Vought Sys.

Corp., 81 F.3d 38, 42 (5th Cir. 1996).

B.   Girouard has not established a prima facie case.

"[T]o establish a prima facie case, a plaintiff need only make a very minimal showing." Thornburg v. Columbus & Greenville R.R. Co., 760 F.2d 633, 639 (5th Cir. 1985). Girouard, a female, is a member of a protected class. She was qualified for the job of cook on GMS's vessel. She was terminated and alleges it was because she is a woman and that men were treated more favorably than she was. In particular, she alleged that GMS did not terminate male employees who engaged in heated arguments, threats of physical violence, and physical altercations while working on its vessels. Rec. doc. 1 at para. 17. However, she has not presented any evidence of defendants' actions with respect to any other employees.

The three male employees identified in the circumstances that led to Girouard's termination were: (1) Duet; (2) Grabert; and (3) Alario. Grabert was terminated after he confirmed his consensual sexual encounter with Girouard on January 2, 2004. Exhibit 18. His termination does not support her allegation of discrimination.

Alario had a verbal altercation with Girouard in the kitchen of the vessel. In connection with that altercation she placed her hands around Alario's neck and said "this is why I want to kill you sometimes." Exhibit 9 at para. 4. There is no evidence that Alario placed his hands on Girouard in a threatening or non-threatening manner. After this incident, Girouard went up to the wheelhouse of the vessel, where she pushed or poked Grabert twice.[2] There is no evidence that Grabert put his

---

[2] In her deposition Girouard denied pushing Grabert and testified that she poked him in his back. He told her that, "you better never put your hands on me again," and she poked him again. Rec. doc. 24 (Exhibit 3 at p. 136).

11

hands on Girouard or otherwise made physical contact with her. Alario and Grabert were not terminated. This does not demonstrate that male employees of the defendants were treated more favorably than she was. Unlike Girouard who made physical contact with both men, there is no evidence that they did anything more than argue with her. Girouard has not established a <u>prima facie</u> case that Alario and Grabert were treated more favorably than Girouard.

C.   <u>GMS's reason for terminating Girouard</u>.

Assuming that Girouard established a <u>prima facie</u> case, the burden shifts to GMS to produce a legitimate, non-discriminatory reason for its decision. It is undisputed that assaulting a licensed officer aboard a vessel is a violation of United States Coast Guard Regulations. Girouard did not deny making physical contact with Grabert, even after he told her not to do it. GMS terminated Girouard for inappropriate behavior. The termination notice states that, "[i]t is not tolerated for any employee to argue and make physical contact with another employees (sic) on the vessel." Exhibit 14. GMS provided an explanation for Girouard's termination, which if believed, would be a legitimate, non-discriminatory reason for its action.

D.   <u>Girouard's evidence</u>.

Girouard must present competent summary judgment evidence that GMS's proffered reason is false and that unlawful discrimination was the true reason for her termination. Girouard submitted a box of documents and two compact discs. The documents in the box are identified as exhibits 1-4. Rec. doc. 27.

<u>Exhibit 1</u>.

A Louisiana administrative law judge determined that Girouard was eligible for

unemployment benefits after her termination in January, 2004.  GMS did not appear at the hearing on May 17, 2004.  The decision states:

> The claimant maintained at the hearing that she did not feel that she was insubordinate to a supervisor or that she physically or verbally abused anyone.  She felt that the employer may have discharged her because she wrote up Robert Alario who persuaded Captain Grabert that the claimant had written a damaging remark about him in her log.

The significance of this statement is that she did not allege that she was terminated because she refused to engage in sexual activities with Captain Duet.  Her statement at the hearing is consistent with Tracee Cloutier's account of Girouard's assertion on March 5, 2004 that she was terminated under false pretenses.  See Undisputed Fact No. 25.  The statement at the hearing is consistent with GMS's contention that it did not become aware of any sexual relationship between Girouard and Duet until Girouard filed her EEOC complaint.

Exhibit 2.

Girouard describes this exhibit as including her application for employment with GMS, achievement awards, U.S. Coast Guard certifications, other certifications and letters of recommendation.  GMS does not challenge Girouard's qualifications for the position.  It is undisputed that she established the second requirement for a prima facie case of discrimination.

Exhibit 3.

This exhibit is nearly an inch of paper.  Girouard describes it as including EEOC records and medical records in support of her claim for mental anguish.

The exhibit does include documents relating to her EEOC claim.  There is an attachment to a "Supplemental Intake Questionnaire."  Although it identifies five crew members of the M/V Stella

Rowan who allegedly witnessed the events, she has not produced an affidavit or other statement from any of these witnesses.

This exhibit appears to include file material from the attorney who represented her when she filed her EEOC claim and the complaint in this case. These documents include a handwritten memo dated May, 2004, and a thirty-two page handwritten memo, which was written between August 23 and September 10, 2004. It appears the memos were authored by Girouard. The beginning of the May, 2004 memo describes a meeting on January 19, 2004 with Raymond Gaubert, GMS operations manager, and Steve Ledet, GMS operations coordinator. The account of the meeting does not indicate that Girouard told Ledet and Gaubert that she had a sexual relationship with Captain Ledet or that she told them that she was sexually harassed during her employment.

The notes from August 23 and September 10, 2004 cover at least the following contentions of Girouard: (1) Karl Greig's transfer in November 2002 (pp. 1-2); the absence of an engineer, Ricky Adams, from a vessel in August 2002 to work on Grabert's camp (pp. 2-4); (3) Cindy Long pretended to be married as a way of putting off Duet (pp. 4-10); Mike Brett telephoned Girouard to report Steve Ledet's promotion (p. 10); Girouard warned Ellen Compton about Duet (p. 11); Brett reported that Ledet asked him to testify about Girouard (pp. 11-18); she terminated her relationship with Brett in 2002, because he did not tell her he was married (pp. 11-18); Duet was behind everything (p. 18); Girouard's work as temporary cook on the M/V Eastern Spirit (p. 19); her meeting with Tracy Cloutier afer her termination (pp. 19-20); Girouard's contention that Cloutier did not conduct an investigation and gather statements from the crew of the M/V Stella Rowan (pp. 19-20); she reports that Merle Rowen and Jessie Dobson, members of the crew on M/V Stella

Rowan, confirmed her description of the events with Alario and Grabert (pp. 20-21); GMS's lawyer planned to coach witnesses on what to say (p. 22); Girouard sunbathed on the top of the wheel house with Duet's permission (pp. 23-26); Girouard requested a transfer from the M/V Stella Rowan (p. 26); Duet got her fired because of a report that Girouard was marrying Brett (p. 28); Girouard's meeting with Dionne Chouest (pp. 29-30); Gary Chouest failed to return her telephone calls (pp. 30-31); and Girouard believed that male cooks were paid more than she was paid (p.32).

Assuming that Girouard's notes were in the form of an affidavit, they are insufficient. In many cases they pertain to incidents that occurred long before the incident giving rise to her termination. They contain hearsay and Girouard's speculation, which are not admissible. There is a not a single statement by a member of the crew of the M/V Stella Rowan who witnessed the events with Alario and Grabert to confirm Girouard's account. One of the persons mentioned by Girouard, Cynthia Long, submitted an affidavit which contradicts Girouard's statements about her. Rec. doc. 24 (Exhibit 17).

Exhibit 4.

Girouard reports that this exhibit includes evidence of Duet's sexual harassment. This includes a birthday card with a picture of a half clothed man and two compact discs. Both discs have the same "song" with pornographic lyrics. Duet disputes that he harassed her. Assuming for purposes of this motion that Duet sexually harassed Girouard and made repeated advances to her, there is no evidence that Girouard ever reported this behavior to GMS while she was employed by it. There is no evidence that GMS knew of Duet's harassment at the time Girouard was terminated. Assuming that Duet harassed her, it does not contradict the description of the events provided by

15

Alario and Grabert which was the legitimate reason for Girouard's termination.

Girouard includes letters of recommendation. It is undisputed that she was qualified for the position of cook aboard GMS's vessel.

Girouard includes love letters from Mike Brett. She contends: (1) she was sexually harassed by Brett; (2) for this reason she sought a transfer from the M/V Louise Provine; and (3) she was not taken off of the vessel because of the supervisor's remarks on December 15, 2001. Assuming that Brett sexually harassed her, she is complaining about events that occurred three years before her termination. It is also noted that she did not report Brett's harassment to GMS.

E.     <u>No genuine issue of material fact raised as to whether GMS's reason was a pretext</u>.

In her complaint, Girouard alleges that Duet and GMS exaggerated the disagreements with Alario and Grabert to create a pretext for terminating her. She alleges that the real reason for her termination was her refusal to engage in further sexual activities with Duet after the consensual incident on January 2, 2004. Rec. doc. 1 at p. 4. In her deposition she testified that, "these guys got together and did what they did. They're not telling the truth." Rec. doc. 24 (Exhibit 3 at p. 70). She also testified that, "[t]hese guys got together and did this, and this is not what happened." <u>Id</u>. at p. 138.

In order for Girouard to raise a genuine issue of material fact she must present evidence that is more than merely subjective and speculative. <u>Nichols</u>, 81 F.3d at 42. She admits that she placed her hands around Alario's neck. She denies that she pushed Grabert, but admits that she poked him twice in his back, while he was in the wheelhouse of the vessel. She admits that Grabert told her

Case 2:06-cv-02122-SS   Document 32   Filed 09/18/07   Page 17 of 17

after the first time to never do it again. She characterizes both incidents as joking.[3] Grabert did not view it as a joke. Rec. doc. 24 (Exhibit 10 at para. 6). Girouard has not presented anything more than her subjective belief as to what Alario and Grabert understood she was doing. She has not raised a genuine issue of material fact as to whether GMS's reason for terminating her was a pretext.

F.      Conclusion.

Girouard had not made the minimal showing required to establish a prima facie case of discrimination. Assuming arguendo that she established a prima facie case, a genuine issue of material fact does not exist on whether GMS's reason for terminating her was merely a pretext for discrimination. Defendants' motion for summary judgment must be granted.

IT IS ORDERED that defendants' motion for summary judgment (Rec. doc. 24) is GRANTED.

New Orleans, Louisiana, this 18th day of September, 2007.



**SALLY SHUSHAN**
**United States Magistrate Judge**

---

[3] Girouard testified, "we were laughing. I laughed . . . and so did Mr. Alario laugh. . . . Rec. doc. 24 (Exhibit 3 at p. 137). With respect to Grabert, she testified, "[h]e was laughing," and "I thought he was kidding. He has a dry sense of humor, too, but he was joking at first." Id. at p. 136.